IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL RAY FORTUNA,**

**Plaintiff,**

v.

**MRS. HOFFMAN, Medical Administrator;
MRS. KROGAN, Assistant Medical
Administrator; MR. DEWAYNE HENDRIX,
Warden; MRS. CORBIN, Physical Assistant;
MRS. SHAFER [sic],[1] C.O.,**

**Defendants.**

**Civil Action No. 1:19cv3
(Judge Kleeh)**

## REPORT AND RECOMMENDATION

### I. Background

The *pro se* Plaintiff, an inmate then-incarcerated at FCI Fort Dix,[2] in Fort Dix, New Jersey,

initiated this Bivens civil rights action on January 2, 2019. ECF No. 1. On February 26, 2019, the

undersigned issued a Report and Recommendation ("R&R"), recommending that Plaintiff's

motion to proceed as a pauper be denied. ECF No. 10. By Order entered June 19, 2019, the R&R

was adopted. ECF No. 15. By Order entered June 24, 2019, Plaintiff was directed to pay the full

filling fee within twenty-eight days. ECF No. 16. Plaintiff paid the requisite fee on July 5, 2019.

ECF No. 23. On July 5, 2019, the Court received an *ex parte* letter from Plaintiff.  ECF No.  25.

The letter was directed to be sealed; by *ex parte* sealed Order entered the same day, the issues

therein were referred to the undersigned for resolution. ECF No. 24. On July 9, 2019, Plaintiff

---

[1] It is apparent from the Defendants' response that Plaintiff has misspelled Defendant Shafer's name.  Accordingly, the Clerk will be directed to correct the docket. The correct spelling of Shaffer's name will be used herein.

[2] After several transfers, Plaintiff was ultimately released from BOP custody on July 10, 2020. See Inmate History, ECF No. 69-1 at 11.

filed another letter motion to the Court. ECF No. 27. By Order entered the same day, the letter motion was denied as premature. ECF No. 28.  Because Plaintiff was responsible for service of process upon the defendants, on August 22, 2019, an Order Regarding Preliminary Review and Service of Process was entered. ECF No. 30. That Order contained a directive to Plaintiff to identify the three John or Jane Doe defendants within thirty days. Id. On September 3, 2019, Plaintiff filed a response; however, because his response was incomplete, unavailing, and ambiguous, the response was construed as a motion to amend. ECF No. 33. By Order entered September 5, 2019, the motion to amend was granted; the prior Order Regarding Preliminary Review and Service of Process was vacated; and the Clerk was directed to send Plaintiff a blank Bivens form to use for filing his amended complaint. ECF No. 34. On September 6, 2019, Plaintiff moved for an extension of time; by Order entered September 17, 2019, the motion was granted. ECF Nos. 35, 38. On September 18, 2019, Plaintiff filed an Amended Complaint. ECF No. 40. However, a review of the same revealed that Plaintiff's intentions regarding the defendants were still unclear. Accordingly, by Order entered October 1, 2019, Plaintiff was directed to clarify his intentions regarding the named defendants and to file a Second Amended Complaint and the Clerk was directed to send him another blank Bivens form to use. ECF No. 46. On October 15, 2019, Plaintiff filed his Second Amended Complaint. ECF No. 49.

On March 31, 2020, a new Order Regarding Preliminary Review and Service of Process was entered [ECF No. 52]; summonses were issued and forwarded to Plaintiff to effectuate service. ECF No. 53. On April 9, 2020, Plaintiff filed copies of the summonses, indicating that they had been served via certified mail. ECF No. 56.  On April 14, 2020, Plaintiff filed a letter Motion to Reissue Summonses and requested that the Court disregard the summonses he sent earlier.  ECF No. 57.  By Order entered April 16, 2020, the prior summonses were quashed; the Clerk was

directed to reissue new sixty-day summonses and forward them to the Plaintiff for service; and Plaintiff was directed to provide proof of service to the Court. ECF No. 58. The summonses were reissued and sent to Plaintiff. ECF No. 59. On May 5, 2020, the reissued summonses for Corbin, Hendrix, Hoffman, Krogan, Shaffer, and the United States Attorneys were returned executed.  ECF No. 61. On May 12, 2020, the Plaintiff returned the reissued summons for Krogan unexecuted.[3] ECF No. 62. On May 28, 2020, the defendants filed a motion for an extension of time and consolidated response date; by Order entered the following day, the motion was granted. ECF Nos. 63, 64. On August 10, 2020, the defendants filed a motion to dismiss or in the alternative, for summary judgment with a memorandum in support and numerous exhibits, along with a motion to seal some of the exhibits. ECF Nos. 68, 69, 70. Because Plaintiff was proceeding *pro se*, on August 11, 2020, a Roseboro Notice issued; by separate Order, defendants' motion to seal was granted. ECF Nos. 71, 72. On August 26, 2020, Plaintiff filed his response in opposition. ECF No. 75.

## II. Relevant Facts

On December 3, 2013, Plaintiff was sentenced to 121 months imprisonment and a 3-year term of supervised release for conspiracy to distribute oxycodone. See Williams Decl., ECF No. 69-1, ¶ 5 at 3; see also SENTRY computerized Public Information Inmate Data, ECF No. 69-1 at 8.

Plaintiff was designated to FCI Morgantown from November 1, 2016, to August 29, 2017. See Williams Decl., ¶ 6 at 3; see also SENTRY computerized Inmate History, ECF No. 69-1 at 11 – 12. On June 12, 2017, Plaintiff was seen at FCI Morgantown by Physician Assistant ("PA") Corbin. See Corbin Decl., ECF No. 70-2, ¶ 4 at 3; see also BOP Health Services Clinical

---

[3] Plaintiff returned the Proof of Service for Krogan, noting she was unavailable to be served because she was no longer employed at FCI Morgantown. ECF No. 62.

Encounter, ECF No. 70-2 at 29 - 31. In addition to his chief complaint of some visual problems, Plaintiff reported that three days earlier, on June 9, 2017, while using the elliptical, he seemed to have pulled something in his right upper arm. Id. at 30. His muscle appeared grossly normal, with mild swelling and some yellow-green-brown bruising, but no evidence of infection. Id. PA Corbin noted Plaintiff could have experienced a partial muscle tear. Id. Plaintiff was advised to rest his upper arm, avoid exercise, and that if it was still bothering him, to return to sick call on June 16, 2017. Id. at 31. Nothing during this visit indicated Plaintiff needed to be sent to an outside hospital for further evaluation. See Corbin Decl., ECF No. 70-2, ¶ 4 at 3.

PA Corbin saw Plaintiff again on June 15, 2017, inter alia, for reports of continued pain in his arm. See Corbin Decl., ¶ 5 at 3; see also BOP Health Services Clinical Encounter, ECF No. 70-2 at 27 – 28. The swelling had gone down some, but it did appear that Plaintiff may have at least partially ruptured his bicep. Id. at 27. Accordingly, PA Corbin submitted a request for an off-site orthopedic surgery evaluation. Id. at 28. There was still no indication that Plaintiff needed an emergency treatment at an outside hospital. Corbin Decl., ¶ 5 at 3.

On June 20, 2017, Plaintiff went on an outside medical trip to West Virginia University Orthopedics for evaluation of a possible tear of his proximal right bicep. See Corbin Decl., ¶ 6 at 3; see also BOP Health Services Clinical Encounter, ECF No. 70-2 at 23 – 25.  The outside provider indicated the arm injury did not require surgery and recommended physical therapy 2 – 3 times weekly.  Id. at 23. Accordingly, Corbin submitted a consultation request for physical therapy on June 20, 2017, with a target date of June 27, 2017. Id.

 Plaintiff completed 6 physical therapy sessions between June 27, 2017, and July 13, 2017. See Corbin Decl., ¶ 8 at 3 – 4; see also Healthworks Rehab & Fitness Daily Notes, ECF No. 70-2

at 64 – 83. After being placed in the SHU,[4] Plaintiff's Physical Therapist provided him with a home exercise program to follow. See Corbin Decl., ¶ 9 at 4; see also Healthworks Rehab and Fitness Home Exercise Program, ECF No. 70-2 at 57 – 63. Although Plaintiff initially refused to participate in the at-home physical therapy [see August 1, 2017 Medical Treatment Refusal, ECF No. 70-2 at 54; August 15, 2017 Medical Treatment Refusal, ECF No. 70-2 at 50],[5] eventually, he started complying and utilizing the time provided to complete his physical therapy exercises, as instructed. See Corbin Decl., ¶ 9 at 4; see also BOP Health Services records, ECF No. 70-2 at 6 – 16. Plaintiff continued receiving care at FCI Morgantown up until his transfer on August 29, 2017. See Corbin Decl., ¶ 10 at 4.

**Incident Report No. 3009799**

On July 14, 2017, Plaintiff was issued Incident Report No. 3099799 charging him with prohibited act code 225, Stalking. See Gyurke Decl., ECF No. 69-3, ¶ 7 at 3; see also Incident Report No. 3009799. Defendant Shaffer was the reporting employee. Id. Specifically, Shaffer reported that:

> On 07/13/17 at 11:00 AM, inmate Fortuna, Michael, reg# 11027-088 approached me on the serving line. Inmate Fortuna said "Nice truck. When are you going to take me for a ride? Do you live up the road you turned onto?" (The prior morning he was leaving the institution for a medical trip. I was leaving work and pulled out behind the town driver.) At the point I directed inmate Fortuna to get away from my line. Approximately 5 minutes later he returns to me again. Inmate Fortuna asked if he could tell me something. He then stated in a whispering voice "your [sic] beautiful". He then "looked" me over and said "hmm, hmm." I directed inmate Fortuna to get away from me. After he walked to his table he began staring at me. I have directed this inmate to leave me alone on one other occasion approximately one month ago. Inmate Fortuna approached me on the serving line and asked "Do you like country music?" I said "yes, some of it." Inmate Fortuna then asked "If I

---

[4] Plaintiff was placed in the SHU on or about July 14, 2017. See ECF No. 70-2 at 16; see also ECF No. 75 at 6. Presumably this was a consequence of the Incident Report No. 3009799 issued that day over the stalking behavior involving Defendant Shaffer. See infra.

[5] Plaintiff refused to use the home exercise program with strengthening bands, despite being warned that he could lose full range of motion and strength in his shoulder and upper arm, because "my shoulder hurts to[o] bad." ECF No. 70-2 at 50.

give you a piece of paper with a list of songs will you listen to them?" I told inmate Fortuna "no, that is inappropriate, if you do that I will write you up."

ECF No. 69-3 at 7.

In addition to the Incident Report, Plaintiff received a notification of increased staff monitoring due to stalking/increased attention to female staff member. See Gyurke Decl., ECF No. 69-3, ¶ 7 at 3; see also Notification of Increased Staff Monitoring/Memorandum for File, ECF No. 69-3 at 10. Plaintiff received his inmate rights at discipline hearing and notice of hearing before the DHO. See Gyurke Decl., ¶ 9 at 4; see also Inmate Rights at Discipline Hearing, and Notice of Hearing Before the DHO. ECF Nos. 69-3 at 12, 14. Plaintiff's DHO hearing took place on July 27, 2017. See Gyurke Decl., ¶ 10 at 4; see also DHO Report, ECF No. 69-3 at 16 – 20. At the hearing, Plaintiff denied the charges, saying "I never said any of this to her. I told her that she had a beautiful truck and that when I get out I'm gonna get a ride like that. We were having fried chicken that day and the guy behind me said hmm, hmm, fried chicken." See DHO Report, ECF No. 69-3 at 16.

After considering the evidence, the DHO found Plaintiff committed the prohibited act of Conduct Disruptive to the Orderly Running of the Institution, Most like Making a Sexual Proposal or Threat to Another (Code 299, Most Like Code 206). Id. at 18. In making the determination, the DHO considered the evidence, including Plaintiff's denial and Shaffer's written statement regarding the incident. Id. The DHO also noted that while Plaintiff previously indicated during the Unit Discipline Committee ("UDC") hearing that he himself was the one who said "hmm, hmm fried chicken," during the DHO hearing, Plaintiff alleged that the "hmm, hmm" statement was made by another inmate. Id. The DHO found no obvious reason for the staff member to fabricate the incident report and believed the staff member's observation was made strictly in the performance of her duties. Id. The DHO also noted the staff member is under a legal obligation to

6

report truthful and accurate facts, whereas Plaintiff had much to lose by accepting responsibility or being truthful in the matter. Id. Plaintiff was sanctioned with the loss of 27 days of Good Conduct Time ("GCT"); 30 days in the SHU; and 6 months' loss of commissary and phone privileges. Id.

### III. Contentions of the Parties

#### A. The Bivens Complaint

In his Second Amended Complaint, Plaintiff impliedly raises an Eighth Amendment claim of deliberate indifference to serious medical needs, arising out of a June 9, 2017 shoulder injury sustained when Plaintiff was using an elliptical machine while incarcerated at FCI Morgantown. ECF No. 49 at 7 – 8. Plaintiff contends that the Bureau of Prisons ("BOP") first delayed treating him; and eventually, although he finally did receive some physical therapy, the therapy was eventually terminated; and the BOP has never provided him with the surgery that would repair his injury. Id. at 8.

Plaintiff also contends that Defendant Shaffer lied about him in order to get him disciplined by removing him from the compound. Id. He alleges that Defendant Hoffman retaliated against him by leaving him in pain and threatening him in the Special Housing Unit ("SHU") after a friend of Plaintiff's called the BOP's Central Office to advise that Plaintiff was not receiving proper care. Id. Plaintiff further contends that Defendant Krogon helped get him removed from the compound. Id. at 9. Plaintiff also implies that he was wrongfully removed from the BOP's Residential Drug Abuse Program ("RDAP"). Id.

Plaintiff contends that he has exhausted his claims. Id. at 4 – 6.

As relief, the plaintiff seeks $25,000,000.00 in compensatory damages and $20,000,000.00 in punitive damages, as well as $500.00 a day for the rest of his life, for having

been rendered "crippled" forever, for his pain, suffering; physical deformity; mental distress; past and future lost wages; future pain and suffering; future medical expenses and medical supplies; lost quality of life; time spent traveling to and from doctors' visits; and the loss of the year he would have had taken off his sentence had he been able to complete the BOP's Residential Drug Abuse Program ("RDAP"). Id. at 9. Further, Plaintiff requests injunctive relief in the form of surgery to repair his arm and shoulder. Id.

Attached to Plaintiff's Second Amended Complaint are a hand-written summary of exhibits [ECF No. 49-1 at 1]; copies of certain medical records [ECF Nos. 49-2 – 49-4]; copies of grievances and responses. ECF Nos. 49-5 –12, 49-14 - 49-19; and a copy of a 7-page handwritten document titled "to the jury,"[6] and dated September 15, 2019, in which Plaintiff recounts in detail his complaints regarding his arm/shoulder injury and the defendants' deliberate indifference to the same; maligns defendant Shaffer's character and habits;  denies all Shaffer's claims in regards to the Incident Report regarding his comments to her; argues that he was wrongfully expelled from RDAP because of Shaffer's "retaliation" caused him to be transferred so that the staff "didn't have to deal with me anymore." ECF No. 49-13.

## B. Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment

Defendants argue that the complaint should be dismissed or summary judgment granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 69 at 6; 8 – 10.

2) As a medical provider member of the United States Public Health Service (USPHS"), Defendant Corbin is entitled to absolute immunity and should be dismissed from this action. Id. at 10 – 11.

---

[6] The "table of contents" to Plaintiff's Second Amended Complaint identifies this document as "A 7 page letter to the Jury written 9-15-19." See ECF No. 49-1.

3) Plaintiff's claims against Defendants Hendrix and Hoffman should be dismissed due to lack of the necessary requisite personal involvement with the conduct at issue in this suit. Id. at 11 – 12.

4) Plaintiff's <u>Bivens</u> claims of deliberate indifference to serious medical needs fail because Plaintiff cannot show the defendants acted with the deliberate indifference required to sustain the claims. Id. at 12 - 14.

5) Plaintiff's claims regarding placement in the SHU and transfer to another facility must be dismissed because they are not cognizable under <u>Bivens</u> because they present a new context where the Supreme Court has not authorized <u>Bivens</u> liability. Id. at 14.

6) The individual BOP defendants are entitled to qualified immunity because they did not commit any constitutional violations. Id. at 19.

7) The BOP has broad discretion to transfer, choose, and assign inmates' housing. Id. at 20 – 22.

Defendants produced copies of a sworn Declaration by Howard Williams, Legal Assistant at the BOP Mid-Atlantic Regional Office ("Williams Decl."); a copy of Plaintiff's Public Information Inmate Data; a copy of Plaintiff's Inmate History; a copy of Plaintiff's Administrative Remedy Generalized Retrieval; a copy of a sworn Declaration of Michael Gyurke, Disciplinary Hearing Officer ("DHO") at FCI Hazelton ("Gyurke Decl."); a copy of a July 13, 2017 Incident Report; a copy of a July 14, 2017 Memorandum for File; a copy of an Inmate Rights at Discipline Hearing; a copy of a Notice of Discipline Hearing before the (DHO);  a copy of a Discipline Hearing Officer Report; a copy of BOP Program Statement ("P.S.") 5270.11 Special Housing Unit; a copy of a sworn Declaration of Patricia Corbin, Senior Clinical Physician Assistant at FCI Morgantown ("Corbin Decl."); and copies of certain records from Plaintiff's BOP Health Services records. <u>See</u> ECF Nos. 69-1, 69-3, 69-4, 70-2.

## E. <u>Plaintiff's Response in Opposition</u>

Plaintiff reiterates his arguments and attempts to refute the Defendants' on the same. He contends that he is innocent of the charges against him and that Defendant Shaffer made them up;

he reiterates his comments regarding Shaffer's character and habits.  ECF No. 75 at 2 – 7. He contends that BOP staff lie about inmates all the time. Id. at 2 – 9. He avers, without elaborating, that he did file his administrative remedies. Id. at 7.  He contends that he begged for treatment but that the defendants were deliberately indifferent to his medical needs, ultimately leaving him maimed for lack of care. Id. at 7 – 12.

Attached to Plaintiff's response are the same hand-written summary of exhibits [ECF No. 75-1 at 1]; copies of certain medical records [id. at 2 – 5]; and copies of grievances and responses already produced as attachments to his Second Amended Complaint [id. at 6 – 32]; and copies of various summaries of case law and notes on legal research. ECF No. 75-2.

## IV. Standard of Review

### A. Motion to Dismiss, Fed.R.Civ.P. 12(b)(1)

In ruling on a motion to dismiss under Rule 12(b)(1), no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. See Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996). Instead, the burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed.R.Civ.P. 12(h)(3).

### B. Motion to Dismiss, Fed.R.Civ.P. (12)(b)(1)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating

its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

However, when, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be

construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## C.  Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  Anderson at 256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  Id. at

248.   Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  <u>Matsushita</u>, at 587 (citation omitted).

## V. <u>Analysis</u>

### A. <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[7] and is required even when the relief sought is not available. <u>Booth</u>, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. <u>See</u> <u>Porter</u>, at 524 (citing <u>Booth</u>, 532 U.S. at 741) (emphasis added).

Moreover, in <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." <u>Woodford</u>, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. <u>Id.</u> at 101 - 102.

---

[7] <u>Porter</u>, 534 U.S. at 524.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). <u>See</u> 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint, a Request for Administrative Remedy to the warden of the institution on the proper form (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the Regional Director of the BOP using the proper form (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction from the Regional Office, the inmate then  completes the administrative remedy process by appealing the decision to the Office of General Counsel in Washington D.C., or "Central Office," using the proper form (BP-11) within 30 days of the date the Regional Director signed the response.[8] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office</u>, 986 F.Supp. 941, 943 (D. Md. 1997). The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. <u>Id.</u>

Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. The alpha-numeric suffix identifies the specific level in the administrative review process. Thus, the suffix "F"

---

[8] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. See Williams Decl., ECF No. 69-1 at 3 – 4.  For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, for example, "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and refiles the appeal at that level, the suffix would be "F2." Id.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's Second Amended Complaint tersely asserts that he "filed all administrative remedies." ECF Nos. 49 at 4 - 6.

**1) <u>Administrative Remedies Regarding Medical Issues</u>**

Attached to Plaintiff's Second Amended Complaint is a July 27, 2017 Inmate Request to Staff (BP-8), addressed to "medical," inquiring about the refills on his medications while he is in the SHU, and what medical intends to do regarding his arm and shoulder injury. ECF No. 49-9. Under the bottom section for "disposition," a staff member wrote "1) Pharmacy notified. 2) You have been given a home exercise program and therapy bands made available." Id. The staff member signed and dated his/her response, the signature itself is illegible but the title is "PA-C," and is dated July 31, 2017. Id.

Plaintiff also attaches another Inmate Request to Staff (BP-8), dated August 1, 2017, addressed to "Mrs. Hoffman medical," inquiring about the medical plans for his arm and shoulder injury and saying that it hurts too much to use the bands to strengthen his arm and shoulder, that he was having difficulty sleeping, and wondered whether he needs surgery. ECF No. 49-10. On the bottom half of the form, under "disposition," P. Corbin PA-C wrote "seen 3 Aug 17" and dated her response August 3, 2017. Id.

Plaintiff also provided a copy of an August 17, 2017 FCI Morgantown Informal Resolution Form (BP-8), sent while he was in the SHU, wherein he complained that he wanted to know what the medical plans were for his arm and shoulder injury and when will surgery be done.

ECF No. 49-11. However, the request was marked as received from inmate on August 16, 2017 at 8:00 p.m.; the date/time it was informally discussed with Plaintiff was noted to be August 21, 2017 at 8:00 a.m., and the printed August 22, 2017 Staff Response was

> Mr. Fortuna, you saw the orthopedist on 6/20/2017 and were told that surgery is NOT recommended. This has been explained to you. The recommended course of treatment is physical therapy. You have received 6 treatments of physical therapy and with the consent of your physical therapist you may continue with home therapy.  Because of your complaint of continued pain, your provider has requested that you be sent to the orthopedist again.  When this decision has been made by the committee, you will be notified."

Id.

Plaintiff also attaches an FCI Fort Dix Informal Resolution Form (BP-8), which notes at the top right that the date the form was issued to Plaintiff was "6-25-18" by "J. Dim [sic]," Correctional Counselor. ECF No. 49-12. In it, Plaintiff requests certain medical boots and states that in the 10 months at FCI Fort Dix, his shoulder and arm have only gotten worse; he requested that it be "fixed" to relieve the pain. Id. The Correctional Counselor noted that the BP-8 was returned from Plaintiff on June 25, 2018, and "you may take your worn boots in exchange for new ones. After you h__ [sic – illegible] you them for 12 months, you can sign up for sick call if your condition with shoulder/arm has worsen [sic]." Id. The Correctional Counselor's response is dated July 11, 2018; the signature is illegible. Id.

Plaintiff attaches a copy of a September 27, 2018 BP-9, filed at FCI Fort Dix, that states he "filed a B-P-8 to the medical administrator" regarding a medical issue he had had since June, 2017, requesting surgery to repair his shoulder and arm. ECF No. 49-6 at 2. There is nothing written below the line for the warden or regional director response except for the case number assigned to the grievance: 955846-F1. Id.

Plaintiff attaches an October 4, 2018 Rejection Notice – Administrative Remedy, noting that the administrative remedy request # 955846-F1 regarding his complaint of delay or access to medical care was being rejected and returned to him because he had not attempted informal resolution prior to submitting it, or did not provide the necessary evidence of his attempt at informal resolution. ECF No. 49-6 at 1.  He was advised to resubmit his request in proper form within 5 days of the date of the rejection, and provide the BP-8 response. Id.

Plaintiff attaches a copy of an October 10, 2018 BP-9 in Remedy ID 955846-R1, complaining that he did not get a response from the BP-8 he filed to the "Administrator of medical" regarding obtaining surgery to repair his shoulder and arm. ECF No. 49-7 at 2. There is nothing written in the bottom section for Regional Director response. Id.

Plaintiff produces a copy of an October 16, 2018 Rejection Notice – Administrative Remedy, from the Administrative Remedy Coordinator, Northeast Regional Office, noting that his regional appeal regarding the issue of delay or access to medical care, Remedy ID 955846-R1, is being rejected because "concur with rationale of regional office and/or institution for rejection. Follow directions provided on prior rejection notices." ECF No. 49-7.

Plaintiff produces a copy of a November 1, 2018 BP-9 in Remedy ID 955846-A1, requesting that the BOP provide him surgery to fix his arm and shoulder. ECF No. 49-8 at 2. The bottom section left for the General Counsel response has been left blank except for a stamp that says "Received November 7, 2018" and the case number, Remedy ID 955846-A1. Id.

Plaintiff also attaches a copy of a November 27, 2018 Rejection Notice – Administrative Remedy, from the Administrative Remedy Coordinator, Central Office, regarding  Remedy ID 955846-A1, regarding his request for medical care, noting that the Central Office was rejecting his appeal because "you submitted your request or appeal to the wrong level.  You should have filed

at the institution. (The first part of the next line of text appears to have been hand-redacted with a heavy black line and is illegible) . . . office level." ECF No. 49-8 at 1. Further reason for rejection was "concur with rationale of regional office and/or institution for rejection. Follow directions provided on prior rejection notices." Id.

Also attached is an undated copy of a BP-8 Informal Resolution Form, complaining of Plaintiff's June 9, 2017 shoulder and arm injury; at the top right, where the "date form issued and initials of correctional counselor" section is to be filled in, the only thing handwritten in was "9/14/11 [sic]."[9] ECF No. 49-5. In the bottom half, reserved for the Correctional Counselor's response, there are no notations, dates, or signature. Id.

## 2) Administrative Grievances Regarding RDAP Expulsion

Plaintiff produced a copy of an undated document titled "Response," which lists his complaint as "expelled from RDAP; Relief Requested: Be placed back in RDAP to graduate in step." ECF No. 49-14 at 1. The apparent response was included:

> You were appropriately expelled from the RDAP after, despite receiving four formal warnings, you continued to behave in a manner that was unhealthy and inappropriate. Readmission is not guaranteed. You will be considered for readmission only after you meet with the DAPCs for a readmission interview. This will be scheduled within the next few weeks.

Id. Plaintiff also produced a copy of what appears to be the final page of an August 2, 2017 unidentified multi-page document, which states at the top "I have discussed this with the inmate and have made the appropriate SENTRY changes. See comments:"

> Comments
> Inmate FORTUNA was expelled from RDAP due to placement in SHU for an extended period of time and maladaptive behaviors that demonstrate a lack of retention and application of RDAP concepts and values. The details of his behaviors are captured in a RDAP Discharge Note. Before reapplying to RDAP he will write a 10 page paper detailing "How you believe you can benefit from RDAP" and

---

[9] Although it is possible that the date might be "9/14/17," which would make more sense in context, it does not appear so in the original.

> "What has changed about your approach to RDAP?" Before being accepted back
> into RDAP he will also need to complete the Nonresidential Drug Abuse Program.
> He was informed that he could reapply after 90 days and his request for readmission
> would be reviewed by the treatment team.

ECF No. 49-18. The document was signed by B. Eberenz, Psy.D. and dated August 2, 2017. The

space for Plaintiff's signature was blank; there was a box at the bottom saying "check here if

inmate refuses to sign" but the box was not checked. Id.

Plaintiff also attaches a FCI Fort Dix Informal Resolution Form (BP-8), apparently issued

to him on August 6, 2018 by a Correctional Counselor whose initials are illegible, complaining of

a March 13, 2018 incident in which he was expelled for "doing what my DTs told me to do" and

stating he wanted to be put back into RDAP "so I can graduate in step." ECF No. 49-14 at 2. The

BP-8 was returned to the Correctional Counsel on August 8, 2018; and the Correctional

Counselor's response was "see attached RDAP staff" and a BP-9 was also issued the same day.

Id.

Plaintiff attaches an August 8, 2018 Request for Administrative Remedy (BP-9), filed

while he was at Fort Dix, complaining about his RDAP expulsion and requesting to be reinstated.

ECF No. 49-15 at 2.  The bottom section, for the Warden or Regional Director response, is blank,

except for having the Remedy ID number of 949905-F1 filled in. Id.

Plaintiff attaches an August 13, 2018 Rejection Notice – Administrative Remedy from the

Administrative Remedy Coordinator at FCI Fort Dix, noting that Plaintiff's Administrative

Remedy ID 949905-F1 regarding substance abuse programs was being rejected because it was

untimely, "institution and CCC requests (BP-09) must be received w/20 days of the event

complained about." ECF No. 49-15 at 1.  Plaintiff was advised that he should include a copy of

this notice with any future correspondence regarding the rejection. Id.

Plaintiff produced a copy of an August 20, 2018 Regional Administrative Remedy Appeal for Remedy ID 949905-R1, requesting to be put back into RDAP. ECF No. 49-16 at 2. The bottom half, for the Regional Director response, is blank except for the filling in of the Remedy ID 949905-R1. Id.

Plaintiff attaches a copy of a September 6, 2018 BP-11 in Remedy ID 9499095-A1, requesting to be reinstated to RDAP. ECF No. 49-17 at 2. The bottom half, intended for General Counsel's response, is blank except for a stamp noting that the Central Office Administrative Remedy Appeal was received on September 12, 2018, and the noting of the Remedy ID number 949905-A1. Id.

Plaintiff produced an August 27, 2018 Rejection Notice – Administrative Remedy from the Administrative Remedy Coordinator, Northeast Regional Office, for Remedy ID 949905-R1, received on August 24, 2018, noting that his regional appeal regarding substance abuse programs was being rejected and returned because  "concur with rationale of institution with rejection." ECF No. 49-16 at 1.  He was advised to include a copy of the notice with any future correspondence regarding the rejection. Id.

Plaintiff produces a copy of an October 1, 2018 Rejection Notice – Administrative Remedy, regarding Plaintiff's appeal to the Central Office regarding the rejection of his Remedy ID 949905-A1 grievance regarding substance abuse programs, noting that "if staff provide a memo stating [that the] late filing was not your fault, then resubmit to the level of the original rejection." ECF No. 49-17 at 1. He was further advised that he should include a copy of the notice with any future correspondence regarding the rejection, and to follow the directions provided on prior rejection notices. Id.

22

In their memorandum in support of their dispositive motion, Defendants assert that Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 69 at 2. They aver that on July 24, 2018, FCI Fort Dix received Plaintiff's Administrative Remedy Request No. 947761-F1, requesting medical boots and medical care for his shoulder and arm.[10] See Williams Decl., ECF No. 69-1, ¶ 8 at 4; see also Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 23. This request was closed ("CLO"), as it was withdrawn at the inmate's request ("WDN").  Id. On October 2, 2018, FCI Fort Dix received another BP-9 administrative remedy request, Remedy ID 955846-F1, filed by Plaintiff requesting surgery to repair his shoulder and arm. See Williams Decl., ¶ 9 at 5; see also Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 25. This request was rejected ("REJ") for reason "INF RSF," meaning the inmate did not first attempt informal resolution, as required by policy. Id. As such, Plaintiff was advised that he could resubmit his request in proper form within 5 days of the date of the rejection notice. Id. Without resubmitting at the institution level, Plaintiff tried to bypass the processes in place and appeal to the Regional and Central Office levels.  See Williams Decl., ¶ 9 at 5. Both of these appeals (Remedy IDs 955846-R1 and 955846-A1) were rejected.  Id.; see also Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 26.

Plaintiff did not file any additional appeals related to his medical care while he was at FCI Fort Dix. See Williams Decl., ¶ 10 at 5. However, the Administrative Remedy Generalized Retrieval does show Plaintiff filed two other administrative remedies filed over an unspecified "medical" issue while he was at FCI Gilmer: Remedy ID 994226-R1, received on September 30, 2019, was rejected on October 17, 2019 for reason "INS," meaning the inmate did not first file a BP-9 request through the institution for the warden's review and response before filing an appeal

---

[10] This would be the BP-9 filed after the June 25, 2018 BP-8 Plaintiff provided a copy of, attached to his Second Amended Complaint.  Plaintiff makes no mention of having withdrawn the remedy.

at that level. <u>See</u> ECF No. 69-1 at 27. Remedy ID 994226-A1, was received on November 4, 2019 and rejected on November 15, 2019, for reason "QUA DIR," meaning the inmate did not submit a complete set (4 carbonized copies) of the request or appeal form. <u>Id.</u> at 28. However, because both of these grievances are unrelated to Plaintiff's claims here, were rejected and apparently not resubmitted, they have no effect on this analysis and will not be considered.

Plaintiff filed no administrative appeals related to his allegedly wrongful transfer. <u>See</u> Williams Decl., ¶ 10 at 5; <u>see also</u> Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 14 – 29.

Defendants concede that Plaintiff did exhaust his claims related to the discipline process over Incident Report No. 3009799, including his allegations regarding Defendant Shaffer's truthfulness during that discipline process. <u>See</u> Williams Decl., ¶ 10 at 5; <u>see also</u> Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 18 – 19 (Administrative Remedies 912298-R1 and 912298-A1).

Defendants' response makes no mention of whether Plaintiff exhausted his claims regarding being expelled from RDAP.

In his response in opposition, Plaintiff merely contends, without elaborating, that he did file his administrative remedies with regard to his claims. ECF No. 75 at 7.

Despite Plaintiff's terse claims that he exhausted all of his administrative remedies, it is apparent from even a cursory a review of the record that Plaintiff has never fully exhausted any claim regarding the medical care at issue here; his response in opposition conspicuously fails to address this fact. While Plaintiff has produced multiple copies of Informal Resolution Forms (BP-8s) regarding the medical care for his shoulder/arm injury, it appears that he apparently never completed the grievance process with any of them. As noted by the Defendants, the only remedies

that Plaintiff pursued with regards to his arm/shoulder injury treatment were either withdrawn at his own request (Remedy ID 947761-F1), or were rejected for not having first attempting informal resolution (Remedy ID 955846-F1). Plaintiff did not heed the specific directions as to how to correct the problems at issue provided in the Rejection Notice; did not attempt to correct his error and begin again; instead, he apparently disregarded the clear instructions provided, and attempted to move to the next level anyway. Nonetheless, Plaintiff's failure to follow the clear directives to correct his grievances over the medical care at FCI Morgantown does not render the grievance process "unavailable," as defined by Ross, supra, 136 S.Ct. at 1859 – 60.

Similarly, Plaintiff's grievances over being expelled from RDAP and requesting reinstatement are also unexhausted. The Administrative Remedy Generalized Retrieval reveals that Plaintiff's first RDAP-related grievance was a BP-10 received on September 14, 2017,[11] requesting "in to RDAP program [sic] or assigned to RDAP dorm;" it was assigned Remedy ID No. 915467-R1. See Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 19. It was rejected for reason "INS," meaning the inmate did not first file a BP-9 request through the institution for the warden's review and response before filing an appeal at that level.  Plaintiff apparently never did anything further with this particular grievance.

Plaintiff's next RDAP-related grievance was a BP-9, received almost a full year later, on August 13, 2018, requested to be placed back into RDAP; this was Remedy ID 949905-F1; it was rejected for reason of "UTF," meaning that it was untimely, because BP-9s must be received within 20 days of the date of the event complained of. See Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 23; see also ECF No. 49-15 at 1.  Plaintiff's BP-10 Regional Appeal of this remedy, Remedy ID 949905-R1 was likewise rejected for failing to correct the issue. See

---

[11] Plaintiff did not provide a copy of this grievance with either his Second Amended Complaint or attached to his response in opposition to the Defendants' dispositive motion.

Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 24; see also ECF No. 49-16 at 1. His BP-11 appeal to the Central Office, Remedy ID 949905-A1, was rejected as well, noting that if Plaintiff obtained a memo from staff, stating that his late filing was not his fault, he could resubmit at the level of the original rejection. See Administrative Remedy Generalized Retrieval, ECF No. 69-1 at 25; see also ECF No. 49-17 at 1. There is no record of Plaintiff ever having done this.  Accordingly, his claims for wrongful removal from RDAP are unexhausted as well.

Likewise, Plaintiff's claims that he was wrongfully held in the SHU, interrupting his physical therapy regimen, and then wrongfully transferred to another facility in retaliation,  so that the staff "didn't have to deal with me anymore [ECF No. 49-13]," or alternatively, "to cover up the mistakes they made in treating me for my injuries . . . [by giving me] a writeup and put[ting] me in the SHU[12] [ECF No. 75 at 2]" are similarly unexhausted, because Plaintiff failed to even initiate the grievance process regarding them.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686, 694 (2007). Beyond the unsupported conclusory allegations to the contrary in Plaintiff's admittedly verified Second Amended Complaint,  when weighed against the sworn declarations provided by the Defendants, as well as the copy of Plaintiff's Administrative Remedy Generalized Retrieval, which all contradict Plaintiff's unsupported allegations regarding his efforts to exhaust, Plaintiff's woefully insufficiently-pled claims  fail to present sufficient evidence to dispute the Defendants' claim that

---

[12] The undersigned finds it more likely that the reason for Plaintiff's transfer was to remove him from the facility where he had been found guilty of the prohibited act of Conduct Disruptive to the Orderly Running of the Institution, Most like Making a Sexual Proposal or Threat to Another (Code 299, Most Like Code 206), i.e., to remove him from further contact with Defendant Shaffer.

he failed to exhaust his administrative remedies before filing suit. Moreover, Plaintiff's conclusory allegations do not meet the "heightened pleading standard" required in actions against government officials. See Randall v. United States, 95 F.3d 339 (4th Cir. 1996); see also Dunbar Corp. v. Lindsey, 905 F.2d at 764.

Accordingly, the undersigned finds that Plaintiff makes no claim that the grievance process was rendered unavailable to him, or that the Defendants or any other prison official ever threatened him with violence to discourage him from filing grievances.  Therefore, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust his claims of deliberate indifference to serious medical needs; wrongful placement in the SHU; wrongful transfer to another facility; and wrongful removal from RDAP cannot be excused, and these claims must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now complete the exhaustion process under the BOP's administrative remedy procedure;[13] therefore, his claims should be dismissed with prejudice.  See 28 C.F.R. § 542.10, *et seq.*

**B. Retaliatory Incident Report Claim**

To the extent that Plaintiff is asserting a claim that he was falsely charged with a disciplinary infraction he did not commit, such claim is also subject to dismissal. Here, Plaintiff alleges that the  incident report was fabricated based on the reporting officer Shaffer's lies, and that he was the victim of retaliation by Shaffer and others, based on the motive of getting Plaintiff

---

[13] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.*  (emphasis added).

transferred for the medical administrator, to cover up their mistakes in his medical treatment and because he kept asking for surgery. ECF No. 49 at 3.

Nonetheless, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2nd Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), *cert. denied*, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff, 418 U.S. at 558, then the prisoner has not suffered a constitutional violation). See Richardson v. Smith, No. 2:14-cv-64, 2015 WL 9875842, *10, Aloi, M.J.  (N.D. W.Va. Nov. 2, 2015) ("In addition, plaintiff does not have a constitutional right to be free from false disciplinary reports.") *adopted by* Richardson v. Smith, 2016 WL 237125, Bailey, J. (N.D. W.Va. Jan. 20, 2016). "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." Lewis v. Viton, 07-3663, 2007 WL 2362587 * 9 (D.N.J. Aug. 14, 2007) (citing Freeman v. Rideout, 808 F.2d 949, 962-53 (2nd Cir. 1986)). There is simply no constitutional right to be free from being falsely accused. See McClary v. Fowlkes, 1:07cv1080 (LO/TCB), 2008 WL 3992637 *4 n.6 (E.D. Va. Aug. 27, 2008) ("To the extent that plaintiff claims that he was falsely accused, he fails to state a § 1983 claim because '[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'") (internal citations omitted); Anderson v. Green, 2009 WL 2711885*4, Civil Action No. AMD-08-2708 (D. Md. Aug. 24, 2009) (same); Riggleman v. Ziegler, No. 5:11-cv-0868, 2012 WL 4119674 * 5, Van Dervort, M.J. (S.D.

28

W.Va. Aug. 22, 2012) (inmates have no constitutional right prohibiting false charges against them). Accordingly, summary judgment should be granted to the Defendants on this claim as well.

## VI. <u>Recommendation</u>

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 68] be **GRANTED** and Plaintiff's Second Amended <u>Bivens</u> complaint [ECF No. 49] be **DENIED with prejudice.**

The Clerk of Court is **DIRECTED** to correct the spelling of Defendant "Shafer's" name on the docket from "Mrs. Shafer" to "N. Shaffer."

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);

Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to provide a copy of this Order to the *pro se* Plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED:  January 5, 2021

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE